IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RACING OPTICS, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | 1:16-cv-288 |
| CLEAR DEFENSE, LLC | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Racing Optics, Inc. ("Racing Optics"), initiated this action against Defendant, Clear Defense, LLC ("Clear Defense"), alleging patent infringement in violation of the Patent Act of 1952, 35 U.S.C. § 1. (ECF No. 1.) Before the Court are four motions: (1) Clear Defense's Motion for Summary Judgment on its First Defense under 28 U.S.C. § 1498, (ECF No. 28); (2) Racing Optics' Motion for Partial Summary Judgment to Dismiss Defendant's First Affirmative Defense under 28 U.S.C. § 1498 (ECF No. 31); (3) Clear Defense's Motion to File under Seal (ECF No. 34); and (4) Racing Optics' Motion to Seal Documents Filed in Support of Response in Opposition to Defendant's Motion for Summary Judgment Regarding Defendant's First Affirmative Defense under 28 U.S.C. § 1498 (ECF No. 42).

For the reasons stated below, the Court (1) grants Clear Defense's motion for summary judgment; (2) denies Racing Optics' motion for partial summary judgment; (3) grants Clear Defense's motion to seal; and (4) grants in part and denies in part Racing Optics' motion to seal.

**I. BACKGROUND**

Racing Optics owns U.S. Patent No. 6,847,492 ("the '492 patent"), entitled "Optical Stack of Laminated Removable Lenses for Face Shields, Windows, and Displays," which contains three independent and six dependent claims. (ECF No. 1 ¶¶ 9, 11.) Racing Optics also owns U.S. Patent No. 7,184,217 ("the '217 patent"), entitled Optical Stack of Laminated Removable Lenses for Face Shields, Windows, and Displays," which contains four independent and twelve dependent claims. (*Id.* ¶¶ 10–11.) Each claim of the '492 and '217 Patents recites a stack of removable lenses with an adhesive between each of the lenses to laminate the layers together. (*Id.* ¶¶ 12–13; *see generally* ECF No. 7.)

Clear Defense manufactures and sells to the United States Government five products comprised of five layers of laminated polymer film, with alternating layers of material and adhesive. (ECF No. 36 ¶¶ 4, 9.) These products are designed to be applied to the windows of the Cougar Mine Resistant Ambush Protected vehicle ("Cougar vehicle"), which is developed and owned by the United States Military. (*Id.* ¶ 4.) Each of the five products manufactured by Clear Defense for the Cougar vehicle has a National Stock Number ("NSN"), which is a code created by the United States Government to identify specific products to purchase from Clear Defense. (*Id.* ¶¶ 5, 7.) To purchase one of the five products, a Government contracting officer posts a request on the Defense Logistics Agency Internet Bid Board System ("DIBBS) using that product's assigned NSN. (*Id.* ¶¶ 21–22.) Once posted, Clear Defense responds to the request with an offer to fill the order, and then the contracting officer generates an Order for Supplies or Services, which is the contract for the particular order. (*Id.* ¶ 23.) Afterwards, Clear Defense ships the requested products to the Government.

2

(*Id.*)  In the last six years,[1] Clear Defense has sold the five products exclusively to the United States Government or one of its contractors for use by the United States Military.  (*Id.* ¶ 19.)  The Government has also designated Clear Defense as its sole provider of the five products.  (*See id.* ¶ 12.)

On April 6, 2016, Racing Optics filed this lawsuit, alleging two claims of patent infringement against Clear Defense for selling the five products ("Accused Products")[2] to the United States Military.  (*See* ECF No. 1 at 4–7.)  Clear Defense then filed its Answer, Counterclaims, and Defenses, admitting that it sold the Accused Products to the United States Military, and further raising certain defenses.  (ECF No. 10 at 4, 7–9.)  Specifically, in its First Defense, Clear Defense asserted that "Racing Optics failed to bring suit against the proper party" pursuant to 28 U.S.C. § 1498.  (*Id.* at 7.)  After Racing Optics moved to strike Clear Defense's First Defense, the Magistrate Judge directed the parties to file position papers and to propose a schedule for addressing Clear Defense's asserted defense.  (*See* ECF No. 20.)  The parties filed a joint position paper and proposed an abbreviated period of discovery to address only Clear Defense's asserted defense under 28 U.S.C. § 1498.  (ECF No. 22.)  In approving the parties' proposed discovery schedule, the Magistrate Judge also ordered that any dispositive motion addressing the § 1498 defense be filed on or before January 13, 2017.  (ECF No. 23.)

---

[1] In patent cases, "[e]xcept as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."  35 U.S.C. § 286.

[2] Both parties reference the allegedly infringing products as the "Accused Products."  For the purpose of this discussion, the Court will likewise reference these products as the "Accused Products."

**II. PENDING MOTIONS**

Both parties have timely moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment related to Clear Defense's First Defense under 28 U.S.C. § 1498. (ECF No. 28; ECF No. 31.) Clear Defense, in support of its motion for summary judgment on its defense under § 1498, contends the evidence establishes its manufacture or use of the Accused Products was "for the Government" and with its "authorization or consent." (ECF No. 29 at 14–15.) Therefore, according to Clear Defense, Racing Optics' exclusive remedy for the alleged patent infringement is in an action against the United States in the United States Court of Federal Claims. (*Id.* at 2.) Racing Optics, in its motion for partial summary judgment, requests dismissal of Clear Defense's § 1498 defense, asserting that Clear Defense has failed to present sufficient evidence that its use of the Accused Products was with the Government's "authorization or consent." (ECF No. 32 at 2–4.)

**III. LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the nonmoving party bears the burden of proof on an issue, the moving party is entitled to judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that a "complete failure of proof" on an essential element of the case renders all other facts immaterial).

4

The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To defeat summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The nonmoving party must support its assertions by citing to particular parts of the record, such as affidavits, depositions, answers to interrogatories, and admissions on file. Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 324.

The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). Further, where, as in this case, the court has before it cross-motions for summary judgment, the court reviews each of them separately to determine if either party is entitled to judgment as a matter of law. *Id.*

## IV. DISCUSSION

The applicability of 28 U.S.C. § 1498(a) is the sole issue presented in the parties' motions for summary judgment. In construing § 1498(a), this Court must apply Federal

5

Case 1:16-cv-00288-LCB-JEP   Document 51   Filed 07/28/17   Page 5 of 17

Circuit law. *Madey v. Duke Univ.*, 307 F.3d 1351, 1359 (Fed. Cir. 2002). Originally enacted in 1910, and amended in 1918, Section 1498(a) provides that:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a). The statute was amended "to stimulate contractors to furnish what was needed for the [First World] War, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents." *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 345 (1928). As the Supreme Court explained, the statute's purpose is "to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the Government and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims." *Richmond Screw Anchor Co.*, 275 U.S. at 343; *see also Madey*, 307 F.3d at 1359 ("[T]here are two important features of § 1498(a). It relieves a third party from patent infringement liability, and it acts as a waiver of sovereign immunity and consent to liability by the United States."). To this end, § 1498 "allows the Government to obtain what it needs from third parties, whether goods, services, or research, regardless of potential patent infringement," with the Government, not the contractor, providing compensation later to a

patent holder. *Madey v. Duke Univ.*, 413 F. Supp. 2d 601, 606 (M.D.N.C. 2006). The Federal Circuit has stated "[t]he coverage of § 1498 should be broad so as not to limit the Government's freedom in procurement by considerations of private patent infringement." *TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986).

Where, as in this case, the suit is between private parties, "§ 1498(a) operates as an affirmative defense, and where a private party's use of a patented invention is 'for the Government' and with the 'authorization and consent of the Government,' that private party cannot be held liable for patent infringement." *Madey*, 413 F. Supp. 2d at 607. Accordingly, the party seeking protection under § 1498 bears the burden of establishing its use is (1) "for the Government"; and (2) "with the authorization [or] consent of the Government." *Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007) (quoting 28 U.S.C. § 1498(a)). Thus, Clear Defense has the burden of establishing each element of its affirmative defense under § 1498.

### A. "For the Government"

First, Clear Defense must establish that its use or manufacture of the allegedly infringing products is "for the Government." "A use is 'for the Government' if it is 'in furtherance and fulfillment of a stated Government policy' which serves the Government's interests and which is 'for the Government's benefit.'" *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1362 (Fed. Cir. 2014) (quoting *Madey*, 413 F. Supp. 2d at 607).

Here, the parties do not dispute that Clear Defense manufactured the Accused Products "for the Government." (*See* ECF No. 32 at 2; ECF No. 49 at 3.) Clear Defense's affidavit and exhibits show that Clear Defense makes, at the request of the Government, the

7

Accused Products, and sells them exclusively to the Government, for use by the United States Military on the Cougar vehicle.[3] (*See* ECF No. 36 ¶¶ 4, 19–20; ECF No 36-3.) Clear Defense's evidence further shows that these vehicles were produced pursuant to a Department of Defense program to provide increased protection for military personnel against certain explosive devices. (*See generally* ECF No. 29-2 at 3, 4–5.) Because there is no genuine issue of material fact that Clear Defense's use or manufacture of the Accused Products was "for the Government," in that it was in furtherance of a Government policy that served the Government's interests and which was for its benefit, Clear Defense has satisfied the first element of its § 1498(a) defense.

### B. "Authorization or Consent"

The Court next considers whether Clear Defense's use or manufacture of the allegedly infringing products was with the "authorization or consent of the Government." "[T]he Government generally consents and authorizes the use of a particular device by inserting an authorization and consent clause into its contracts, according to federal procedures."[4] *Parker Beach Restoration, Inc. v. United States*, 58 Fed. Cl. 126, 132 (2003). However, a specific contract clause containing express consent or authorization is not required. *Id.* Any "explicit acts or extrinsic evidence" that sufficiently proves "the government's intention to accept liability" will

---

[3] Although some of the sales are to contractors that manufacture the Cougar vehicles for the Government, there is no dispute that the sales are "for the Government." (*See* ECF No. 45 at 3.)

[4] For instance, 48 C.F.R. § 52.227-1 states, "The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent" that is "[e]mbodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract." 48 C.F.R. § 52.227-1(a)(1).

8

suffice. *Larson v. United States*, 26 Cl. Ct. 365, 369–70 (1992) (quotation omitted). Accordingly, the Government may give express or implied authorization or consent to the use of the infringing products. *TVI Energy Corp.*, 806 F.2d at 1060.

Implied authorization "may be given 'by contracting officer instructions, by specifications or drawings which impliedly sanction and necessitate infringement, [or] by post hoc intervention of the Government in pending infringement litigation against individual contractors.'" *Parker Beach*, 58 Fed. Cl. at 132 (alteration in original) (quoting *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (Cl. Ct. 1976)). Implied authorization or consent may be found where: (1) "the government expressly contracted for work to meet certain specifications; (2) the specifications cannot be met without infringing on a patent; and (3) the government ha[s] some knowledge of the infringement." *Larson*, 26 Cl. Ct. at 370. Another situation in which implied authorization or consent may be found is "where the [G]overnment requires the private contractor to use or manufacture the allegedly infringing device." *Madey*, 413 F. Supp. 2d at 609 (citing *Hughes Aircraft Co. v. United States*, 29 Fed. Cl. 197, 223 (1993)). Because § 1498 operates as a waiver of the Government's immunity, the court must construe any implied authorization or consent narrowly. *Id.*

Here, although Clear Defense has not presented any contract between it and the Government containing the general consent and authorization clause found in the regulations, which would support express authorization, Clear Defense's evidence is sufficient to establish implied authorization or consent. Clear Defense's affidavit and exhibits in support of its motion for summary judgment forecast the following evidence: the Government contracted with Clear Defense for the procurement of the Accused Products for a military vehicle,

9

assigning each Accused Product a NSN.  (*See, e.g.*, ECF No. 36 ¶¶ 4, 7, 26; ECF No. 29-6; ECF No. 36-5.)  Clear Defense has been designated as the sole Government-approved supplier of the Accused Products, and has manufactured them for, and sold them to, exclusively the Government or one of its contractors.  (ECF No. 36 ¶¶ 4, 12, 19–21; *see* ECF No. 36-3; ECF No. 36-2 at 524.)  The Government tested, qualified, and approved the Accused Products, and Clear Defense is prohibited from altering the products without the Government's approval.[5]  (*See* ECF No. 36 ¶¶ 8, 17; ECF No. 36-1.)  In response to orders posted by the Government on the DIBBS, or purchase orders received by approved Government contractors, Clear Defense provides the Accused Product pursuant to that product's approved specification, and the Government or its contractor accepts them for use on the Cougar vehicle.  (*See* ECF No. 36 ¶¶ 21–30; *see* ECF No. 29-6; ECF No. 29-7; ECF No. 36-4; ECF No. 36-5.)  Based on this evidence, Clear Defense has carried its burden of establishing that the Government required it to manufacture the Accused Products in accordance with its approved specifications and thus gave implied authorization.

Racing Optics, nevertheless, argues that to establish authorization or consent, Clear Defense must produce evidence that the "[G]overnment required [Clear Defense] to provide a product that could only be produced by infringing Racing Optics' patents."  (ECF No. 32 at 17; *see also* ECF No. 41 at 10 ("Defendant has provided no evidence that the government

---

[5] Prior to supplying the Accused Products, Clear Defense supplied a different product that contained five separate layers that were applied one at a time to vehicle windows.  (ECF No. 49 at 9; ECF No. 41 at 11.)  Clear Defense later started supplying the pre-laminated 5-layer stack.  (ECF No. 49 at 9; ECF No. 41 at 11.)  The evidence does not reveal whether the Government or Clear Defense requested the change.  (*See* ECF No. 43 at 23–24.)  Nor would it impact the Court's analysis based on the circumstances of this case.

required or requested the infringing aspects of Defendant's products.").) As support, Racing Optics relies on a number of cases including *Larson*, *Carrier Corp. v. United States*, 534 F.2d 244 (Ct. Cl. 1976), and *Windsurfing International Inc. v. Ostermann*, 534 F. Supp. 581 (S.D.N.Y. 1982). However, unlike this case, none of these cases involved a contractor selling Government-approved products exclusively to the Government. Nor was there any direct involvement by the Government with the allegedly infringing products such that the Government could be deemed to have provided authorization and consent. *See Larson*, 26 Cl. Ct. at 370–71 (holding that the government's reimbursement of qualifying medical expenses under Medicare, Medicaid, and CHAMPUS did not mean the government required, mandated, or approved the use of the accused product or any particular treatment); *Carrier Corp.*, 534 F.3d at 249 ("In this case, it is undisputed that the Government was paying . . . for . . . services—i.e., the collection and removal of refuse—and not for the refuse equipment itself."); *Windsurfing*, 534 F. Supp. at 588 ("[Defendant's] contention that the United Sates authorized the alleged infringement here by granting the [Olympic Committee] jurisdiction to run Olympic Games . . . and thereby implicitly authorized [the Committee] to use whatever sporting equipment is designated by international Olympic bodies is thus tenuous at best.").

Further, the Fourth Circuit in *Bereslavsky v. Esso Standard Oil Co.*, rejected an argument similar to the one advanced by Racing Optics, stating, "there is no language in the statute which limits its application to cases where the government contracts expressly for what will infringe." 175 F.2d 148, 150 (4th Cir. 1949); *accord Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell*, 399 F.2d 913, 915 (5th Cir. 1968) ("The absence of any designation or specification in the contract that would require the use of the appellant's invention does not preclude a finding

11

that there has been a use for the Government with the authorization and consent of the Government."). "To limit the application of the statute to cases where officers of the government intentionally contract for patent infringement," according to the Fourth Circuit, "would in very large measure defeat [the statute's] purpose," *Bereslavsky*, 175 F.2d at 150, which is to "allow[] the Government to obtain what it needs from third parties . . . regardless of *potential* patent infringement," *Madey*, 413 F. Supp. 2d at 606 (emphasis added). As such, the Court is persuaded by *Bereslavsky* and other decisions that have found implied authorization or consent where the Government approves and pays for an allegedly infringing product, which was supplied by a contractor in accordance with the Government's requirements. *See Bereslavsky*, 175 F.2d at 149–51; *Croll-Reynolds Co.*, 399 F.2d at 915; *Croydon Co. v. Unique Furnishings, Ltd.*, 831 F. Supp. 480, 484 (E.D.N.C. 1993) ("Even if the Government had not expressly given authorization and consent to the infringing manufacture, it would nevertheless be within the terms of § 1498(a) because it has effectively given its authorization and consent by contracting for and accepting delivery of the alleged infringing manufacture."). Thus, Clear Defense has established that its use of the Accused Products was with the authorization or consent of the Government.

V. **MOTIONS TO SEAL**

Both parties have moved to seal various unredacted documents submitted to the Court as part of their briefing on the motions for summary judgment. (ECF Nos. 34, 42.) "The public enjoys a right to access documents filed in connection with a dispositive motion in a civil case." *Pub. Impact, LLC v. Boston Consulting Grp., Inc.*, 117 F. Supp. 3d 732, 745 (M.D.N.C. 2015). However, a court has discretion to seal documents where the "public's right of access

12

is outweighed by competing interests." *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). To determine whether to seal documents, the court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). Local Rule 5.4 outlines similar requirements.[6] L.R. 5.4. The burden is on the party seeking to keep information sealed. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004).

Clear Defense moves to seal the unredacted versions of Exhibits D, F, G, J, and K, as well as the unredacted Jennings Declaration, all of which were provided as part of its motion for summary judgment. (ECF No. 34.) This motion is opposed by Racing Optics on grounds that Clear Defense has not complied with the Court's Local Rules. (ECF No. 40 at 1.)

Upon review of these documents, the Court notes that they contain confidential and proprietary information that includes drawings, a Parts Manual, and non-public information on sales regarding the Government's Cougar vehicle. (*See generally* ECF Nos. 36, 36-1, 36-2, 36-3, 36-4, 36-5; *see also* ECF No. 46 at 3–4.) Exhibit F, which is the Parts Manual for the Cougar vehicle, outlines in over 600 pages details about the Cougar vehicle, and further states, "Distribution authorized to US Government agencies and their contractors; proprietary

---

[6] The requirements are: (1) stating "the reasons why sealing is necessary;" (2) explaining "why less drastic alternatives to sealing will not afford adequate protection;" (3) "[a]ddress[ing] the factors governing sealing of documents reflected in governing case law;" and (4) stating "whether permanent sealing is sought and, if not, stat[ing] how long the document should remain under seal and how the document should be handled upon unsealing." L.R. 5.4(b).

13

information." (ECF No. 36-2 at 2.) While the public has an interest in access to judicial documents, this interest is outweighed by the Government's interest in maintaining the confidentiality of sensitive military information. In addition, public notice of Clear Defense's motion to seal was given on January 17, 2017, which is the date the motion was filed, (ECF No. 34), and there has been no objection raised. *See Pub. Impact*, 117 F. Supp. 3d at 746. Also, the Court has considered whether less drastic alternatives are available than permanently sealing the unredacted version of the documents. Except for the Jennings Declaration, sealing the remaining documents in their entirety is proper because "the documents would be essentially unreadable if the confidential information were redacted." *Alexander v. City of Greensboro*, Nos. 1:09-CV-00293, 1:09-CV-00934, 2013 WL 6687248, at \*5 (M.D.N.C. Dec. 18, 2013). Because Clear Defense has carried its burden of satisfying the requirements to seal the unredacted versions of Exhibits D, F, G, J, and K, (ECF Nos. 36-1, 36-2, 36-3, 36-4, 36-5), as well as the unredacted version of the Jennings Declaration, (ECF No. 36), the Court will grant Clear Defense's motion to seal (ECF No. 34).

Next, the Court considers Racing Optics' motion to seal Attachments 3 and 4 of Gilbert J. Andia, Jr.'s Declaration, which it submitted in its brief in opposition to Clear Defense's motion for summary judgment. (ECF No. 42.) In its motion, Racing Optics states it "does not consider the materials being filed to contain any confidential material," but, because they were designated "Confidential, Attorneys' Eyes Only," it was "obligated to submit all of the materials under seal." (ECF No. 42 at 2.) Clear Defense does not oppose unsealing Attachment 3, but maintains that the unredacted version of Attachment 4 should be

14

permanently sealed. (ECF No. 47 at 2, 4.) Clear Defense has provided a redacted version of Attachment 4 as a less drastic measure than sealing the entire document. (*Id.* at 4.)

The Court will unseal Attachment 3 because neither party claims that it contains any confidential information. Although the unredacted version of Attachment 4, which is a power point presentation, contains proprietary information regarding testing performed by the Marine Corps on parts used on a military vehicle, (ECF No. 47 at 2–3; ECF No. 44 at 3), Clear Defense has provided a version that it claims redacts the proprietary information, (ECF No. 47-1). The Court finds that providing a redacted version is a less-drastic measure than sealing the entire document and strikes a balance between the public's right of access and the Government's protection of its confidential and proprietary information. Further, Racing Optics filed the motion on February 13, 2017, and there has been no objection filed. The Court therefore finds the requirements for permanently sealing the unredacted version of Attachment 4 have been satisfied. Thus, the Court grants Racing Optics' motion to seal permanently the unredacted version of Attachment 4 (ECF No. 44), and denies the motion to seal permanently Attachment 3 (ECF No. 43).

## VI. CONCLUSION

Clear Defense has carried its burden of demonstrating that its use or manufacture of the Accused Products was "for the Government" and with its "authorization or consent." The Federal Court of Claims is the proper court to adjudicate Racing Optics' patent infringement claims. Because there is no genuine issue of material fact as to Clear Defense's asserted defense under § 1498(a), the Court concludes that Clear Defense is entitled to

summary judgment and thus dismissal of this action. Racing Optics' motion for partial summary judgment must, therefore, be denied.

Clear Defense has also carried its burden of satisfying the requirements to permanently seal the unredacted versions of Exhibits D, F, G, J, and K, as well as the unredacted version of the Jennings Declaration, which were filed in support of Clear Defense's motion for summary judgment. The Court will therefore permanently seal these documents. Regarding Racing Optics' motion to seal Attachments 3 and 4 to its brief in opposition to Clear Defense's motion for summary judgment, the Court will unseal Attachment 3 since neither party seeks to have it permanently sealed. However, because Clear Defense has satisfied its burden to have the unredacted version of Attachment 4 permanently sealed, the Court will permanently seal this document.

## ORDER

IT IS THEREFORE ORDERED that Clear Defense's Motion for Summary Judgment on its First Defense under 28 U.S.C. § 1498 (ECF No. 28) is GRANTED. Racing Optics' Motion for Partial Summary Judgment to Dismiss Defendant's First Affirmative Defense under 28 U.S.C. § 1498 (ECF No. 31) is DENIED.

IT IS FURTHER ORDERED that Clear Defense's Motion to File under Seal (ECF No. 34) is GRANTED, and the unredacted versions of Exhibits D, F, G, J, and K (ECF Nos. 36-1, 36-2, 36-3, 36-4, 36-5), as well as the unredacted Jennings Declaration (ECF No 36), are permanently sealed.

IT IS FURTHER ORDERED that Racing Optics' Motion to Seal Documents Filed in Support of Response in Opposition to Defendant's Motion for Summary Judgment

Regarding Defendant's First Affirmative Defense under 28 U.S.C. § 1498 (ECF No. 42) is GRANTED IN PART AND DENIED IN PART. The motion is granted with respect to the unredacted version of Attachment 4 (ECF No. 44), and this document is permanently sealed. The motion is denied with respect to Attachment 3 (ECF No. 43), and this document is unsealed.

A Judgment dismissing this action without prejudice will be entered contemporaneously with this Order.

This, the 28th day of July, 2017.

/s/ Loretta C. Biggs  
United States District Judge